```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH GOFF              :     CIVIL ACTION
                            :
         v.                 :
                            :
BAYADA NURSES, INC.         :     NO. 04-5226
```

MEMORANDUM AND ORDER

McLaughlin, J.                                    March 24, 2006

      Elizabeth Goff has sued her former employer, Bayada Nurses, Inc. ("Bayada"), for overtime compensation pay for her work in excess of forty hours per week under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 207, and its New Jersey counterpart, the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56.  Bayada argues that Goff is not entitled to overtime pay because she was exempt from the statutes' overtime pay requirements as a bona fide executive, administrative, and/or combined executive and administrative employee.

      Goff filed a motion for partial summary judgment[1] on the issue of liability for her FLSA claim only, and Bayada filed a motion for summary judgment.[2]  The Court held oral argument on

---

[1] Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

[2] Goff did not move for summary judgment on her NJWHL claim, and she did not respond to Bayada's motion regarding this claim.  The Court will assume that she would make the same arguments on her NJWHL claim that she has made on her FLSA claim.

the motions on March 2, 2006. The Court will deny the plaintiff's motion and grant the defendant's motion.

I. Procedural History

Goff filed her complaint against Bayada on November 9, 2004. Bayada answered the complaint, and the parties conducted discovery. On September 30, 2005, Goff filed a motion for partial summary judgment on the issue of FLSA liability only, and Bayada filed a motion for summary judgment. The Court held oral argument on the motions on March 2, 2006.

II. Facts

Bayada provides in-home nursing care to patients. Beginning in April of 1996, Goff was employed as an on call supervisor by Bayada. She eventually received the new title of staff supervisor/on call supervisor. In April of 2004, she was put on a six-month probationary period because of performance problems. The problems continued during this period, and she was terminated in October of 2004. It is undisputed that Goff never complained that she should be paid overtime until after she was terminated. (Goff Dep. at 13-14, 138; Bayada Mot. for Summ. Judg. ("Bayada Mot.") Ex. 11).

In addition to per diem pay for on call time, Goff's base salary ranged from $37,000 per year in 2000, to $37,925 per

year beginning in April of 2001, to $40,000 per year as of April of 2002, to $28,000 plus incentive pay of 3.75% of the gross profit margin of her unit as of April of 2003.  Her total compensation from Bayada in 2003 was $80,744.00, and she earned $63,524.90 in 2004 in the approximately ten months before she was terminated.  (Goff Dep. at 101-03; Bayada Resp. to Pl. Mot. for Partial Summ. Judg. ("Bayada Resp.") Ex. E).

Goff stated in her resume on careerbuilder.com that she had sixteen years of management experience,[3] and admitted in her deposition that that included her eight years at Bayada.  In this resume, Goff also stated that as a staff supervisor at Bayada, she was "[d]irectly responsible for a caseload of approximately 25 clients" and that her "foremost duty [was] to schedule appropriate field staff . . . . while also casemanaging to ensure that the employee retain[ed] a positive relationship with the client and/or family while adhering to standards."  She also stated that she "assist[ed] with interviewing, advertising, maintaining [her] ads on [the] company website," and that she had "been cross trained in Human Resources."  (Bayada Mot. Ex. 5;

---

[3] On this website, in a section entitled "Experience," Goff indicated that she managed "50 others."  Goff argues that the Experience section was not actually part of her resume.  She states that she managed 50 others throughout her many years of employment, but not at Bayada.  It is not entirely clear from the careerbuilder.com profile whether Goff was referring to her Bayada employment or her entire career when she made this statement.  (Bayada Mot. Ex. 5).

Goff Dep. at 27-28, 30).

On the same resume, she also described the on call supervisor position. She stated that her duties included "taking new client referrals, finding replacement coverage for staff who may call out, administering help to existing clients calling in," and "general support when needed." (Bayada Mot. Ex. 5).

On her monster.com resume, Goff described her Bayada duties:

> Maintain caseload of pediatric and adult patients, work with manag[][4] organizations, insurance companies and other State agencies to perform clie[nt] services, maintain confidentiality, assist in case audits. Trained in Human Resources to assist in recruitment/retention of nursing staff, supervise and evaluate staff, performance evaluations, inservices, State certification, week[ly] payroll.

(Bayada Mot. Ex. 6).

Goff's self-evaluation form stated that her "Main Function" as a staff supervisor was to "oversee all caseload management activity, assuming responsibility for the delivery of services in accordance with Bayada Nurses' standards." In her deposition, when questioned about this statement, she stated: "Correct, that was their main function." She also confirmed in her deposition the accuracy of her statements on her self-evaluation form that her specific responsibilities included scheduling, monitoring her caseload, facilitating, supervising,

---

[4] Some of the letters are cut off in this document.

evaluating field staff performance, helping with interviewing, hiring, salary determinations and terminations, and documenting incidents.  Goff provided feedback regarding potential new employees and had discretion in setting employee bonus levels within a preset range.  Although Goff generally conferred with a Director before terminating an employee, she signed termination letters on at least two occasions.  She was also cross-trained in human resources functions, so that she could ensure that employees under her complied with certification, immunization and authorization requirements.  (Bayada Mot. Exs. 12, 15; Goff Dep. at 32-36, 47-48, 96, 122-25).

Goff confirmed in her deposition that her foremost duty as a staff supervisor was to schedule appropriate field staff.  She stated that this "[was] challenging because you're trying to get these nurses to work, try to get them to cover certain shifts or work on certain cases and keeping the families happy and getting the hours that the children, or whoever the patient needs, filled."  Other staff supervisors confirmed the challenging, varied, and discretionary nature of the staff supervisor position.  (Goff Dep. at 30-31; Barbaccia Dep. at 25; Hess Dep. at 13; Russell Dep. at 39, 42).

As an on call supervisor, Goff was the only manager on duty when the office was closed.  She had to handle any problems or emergencies that arose during those hours, including client

complaints. There is a dispute over whether Goff was required to obtain approval from her director before offering a bonus to an employee to induce that employee to take an on call assignment. Goff claims that although she had previously been authorized to do so unilaterally, during the most recent two to three years of her employment, she was required to call her director and get his approval. (Goff Dep. at 40-41, 128-29).

In Goff's post-discovery declaration, she stated that her "duties were the same for both jobs - to schedule nurses for clients to provide home nursing care." She characterized her work as "clerical," stated "I was not a manager," and "I did not supervise the workers' performance," and minimized her role in hiring and firing. (Goff Declar.).

III. Analysis

    A.   Goff's Declaration

The Court will not consider Goff's declaration to the extent that it conflicts with her prior sworn deposition testimony. The United States Court of Appeals for the Third Circuit has held that where a party contradicts prior sworn testimony without satisfactory explanation through an affidavit at the summary judgment stage, "the subsequent affidavit does not create a genuine issue of material fact." Martin v. Merrell Dow Pharms., Inc., 851 F.2d 703, 706 (3d Cir. 1988). The rationale

for this rule is that when "the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction," "the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit."  Id.

Exhibit 1 to Goff's motion is a post-discovery declaration by Goff.  Bayada argues that this declaration is inconsistent with Goff's prior sworn testimony and should not be considered under the Martin rule.  Goff argues that this declaration is (1) necessary, because of "ineffective deposition questioning," and (2) consistent with her prior testimony.

Goff makes no substantive argument that the deposition questioning was ineffective.  Goff was questioned in detail about her duties and position.  To the extent that the declaration conflicts with Goff's prior sworn testimony, the Court will disregard it under the Martin rule.  In addition, even accepting Goff's declaration in its entirety, it is not clear that Goff would be entitled to overtime pay.

B.  Executive Exemption

Bayada argues that Goff fits within the executive exemption to the overtime pay rule, and the Court agrees.  Under the FLSA and the NJWHL, an employer must pay an employee who

7

works more than forty hours per week at a rate of time-and-a-half unless the employer establishes that the employee falls within an exemption from the overtime requirement based upon her salary, duties and work. 29 U.S.C. § 207; N.J. Stat. § 34:11-56(a)(4).[5] Employees who act in a bona fide executive capacity are exempted from the statutes' overtime requirements. 29 U.S.C. § 213(a)(1); N.J.A.C. 12:56-7.1. An employer has the burden of proving that an employee is exempt from FLSA coverage. Idaho Sheet Metal Workers, Inc. v. Wirtz, 383 U.S. 190, 209 (1966). An exempt executive employee is one who is paid on a salary basis of under the FLSA, not less than $250 per week before August 23, 2004, or $455 per week after that date, and under the NJWHL, at least $400 per week and:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
>
> (d) Who customarily and regularly exercises discretionary powers; and
>
> (e) Who does not devote more than 20 percent . . . of his hours of work in the workweek to activities

---

[5] The New Jersey statute is patterned after the FLSA.

>which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section.

Former 29 C.F.R. § 541.103;[6] N.J.A.C. 12:56-7.1.

### 1. Salary Basis

Goff's salary qualified her for the executive exemption. During the three years prior to her termination (which is the relevant period under the applicable statute of limitations), Goff held the combined position of staff supervisor and on call supervisor. She earned a salary during this time, and was paid on a per diem basis for on call time. Her base salary ranged from $28,000 to $40,000 during this period. This works out to roughly $538-$739 per week, and qualifies Goff for the executive exemption. An employee is not disqualified from this exemption even if her employer provides her with additional compensation, and the additional compensation need not be calculated as overtime pay. 29 C.F.R. § 541.604.

### 2. Management as Primary Duty

To be an executive employee, Goff's primary duty must have been management. The regulations define the primary duty

---

[6] This section was superseded by 29 C.F.R. § 541.100 effective August 23, 2004. The new section does not contain a percentage requirement, as section (e) has been omitted. As discussed below, Goff satisfies the exemption under either provision.

9

as:

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a); see also Guthrie v. Lady Jane Colleries, Inc., 722 F.2d 1141, 1145-46 (3d Cir. 1983); McGrath v. City of Philadelphia, 864 F. Supp. 466, 489 (E.D. Pa. 1994). An employee who spends over 50% of her time performing management duties will generally satisfy the primary duty requirement, though an employee who spends less than 50% of her time doing so may still fall under the exemption. 29 C.F.R. § 541.700(b).

The regulations list management duties including:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for

>    the safety and security of the employees or the
>    property.[7]

29 C.F.R. § 541.102.

In her deposition, Goff confirmed the statement on her self-evaluation form that a staff supervisor's "main function" is to "oversee all caseload management activity, assuming responsibility for the delivery of services in accordance with Bayada Nurses' standards." (Goff Dep. at 122). In her resumes, she stated that she was "[d]irectly responsible for a caseload of approximately 25 clients" and that her "foremost duty [was] to schedule appropriate field staff . . . . while also casemanaging to ensure that the employee retain[ed] a positive relationship with the client and/or family while adhering to standards." (Bayada Mot. Ex. 5). She stated that she was "[t]rained in Human Resources to assist in recruitment/retention of nursing staff, supervise and evaluate staff, performance evaluations, inservices, State certification, week[ly] payroll." (Bayada Mot. Ex. 6). These are all management functions.

Goff confirmed in her deposition, her self evaluation, her careerbuilder.com resume, and her monster.com resume that she managed others. In view of this, the dispute about whether her statement on careerbuilder.com that she managed 50 others referred to her Bayada employment is not material. Her later

---

[7] After the amendments, the duties of "planning and controlling the budget; and monitoring or implementing legal compliance measures" were added.

attempts in her declaration and at oral argument to minimize the importance of her duties do not create genuine issues of material fact.

Even accepting as true her statements that she spent most of her time scheduling the nurses, "setting and adjusting [employees'] . . . hours of work," "planning the work," and "apportioning the work among the employees" are identified in the regulations as management duties.  29 C.F.R. § 541.102.

Goff has also confirmed that she assisted with interviewing and selection, maintained production records, handled employee complaints and grievances, and had responsibility for disciplining employees.  (Goff Dep. at 32-36, 47-48, 96, 123-25; Bayada Mot. Ex. 15).  She also stated that she "assist[ed] with interviewing, advertising, maintaining [her] ads on [the] company website," and that she had "been cross trained in Human Resources."  (Bayada Mot. Ex. 5).

The Court finds that Bayada has carried its burden of proving that no genuine dispute of material fact remains on the issue of whether Goff's primary duty was management.

3.   Customary and Regular Direction of Two or More
     Employees

Under the next prong of the executive exemption test, Goff must have customarily and regularly directed two or more employees.  On her monster.com resume, Goff described her Bayada

duties as including assisting in recruitment and retention of nursing staff, supervising and evaluating the staff, and making performance evaluations. (Bayada Mot. Ex. 6). She was trained in human resources, and ensured that employees complied with Bayada human resources policies including certification, immunization and authorization requirements. (Goff Dep. at 35). She confirmed in her deposition that her main function was to "oversee all caseload management activity, assuming responsibility for the delivery of services in accordance with Bayada Nurses' standards." (Bayada Mot. Ex. 12; Goff Dep. at 122). She also confirmed that her specific responsibilities included monitoring employees, facilitating, supervising, and evaluating field staff performance, helping with interviewing, hiring, salary determinations and terminations, and documenting incidents. (Goff Dep. at 123-25). Goff's primary scheduling duty involved convincing employees to cover certain shifts. (Goff Dep. at 31). Being the only manager on duty as an on call supervisor, Goff had no choice but to direct other employees. (Goff Dep. at 128).

   The Court finds that Bayada has carried its burden of proving that no genuine dispute of material fact remains on the issue of whether Goff regularly directed several other employees.

   4. <u>Authority to Hire or Fire or Suggestions Given Weight</u>

  Goff had the authority over or, at the very least, her suggestions and recommendations were given particular weight in the decisions to terminate employees, as evidenced by the two termination letters that she alone signed.  (Bayada Mot. Ex. 15). She herself describes her substantive involvement in interviewing, recruitment and hiring.  (Goff Dep. at 34-35).  Her job description notes that she had a responsibility "[t]o participate in and/or contribute to the interviewing, hiring, initiating of salary increments, and terminating of employment for field employees."  (Bayada Mot. Ex. 12).  The Court finds that Bayada has carried its burden of proving that no genuine dispute of material fact remains on this element.

   5. <u>Customary and Regular Exercise of Discretionary Powers</u>

  To qualify for the executive exemption, Goff must have customarily and regularly exercised discretionary powers.  In <u>NLRB v. Attleboro Assocs., Ltd.</u>, 176 F.3d 154, 167 (3d Cir. 1999)(internal quotations omitted), the Court reasoned that "decisions to assign workers are inseverable from the exercise of independent judgment, especially in the health care context where staffing decisions can have such an important impact on patient health and well-being."  The Court found that where nurses set or

assisted in setting daily assignments for nursing assistants and held general supervisory authority over their duties, but did not "exercise the authority to initiate or request transfers or require an off-duty [nursing assistant] to report to work when a unit is understaffed," these nurses were using independent judgment.  Id. at 166-67.

Goff scheduled and assigned employees in the health care context, and her own admissions as well as the other evidence in the case show that she used discretion and independent judgment.  In addition, Goff had more discretionary duties than the nurses in Attleboro.  Unlike them, she was responsible for finding nurses to fill emergency needs.  She had to deal with patient problems, and was often the only supervisor on duty.  She had to match up specific patient needs with specific nurse skills.  (Bayada Mot. Exs. 5, 6; Goff Dep. at 126).  Goff's attempts to distinguish the Attleboro case because she had to assign nurses within the parameters of a nurse assignment coding system at Bayada are unpersuasive.  Goff used discretion in making these placements, and they were her main task.  Her other tasks, such as helping with hiring and firing, also involved the use of discretion.  The Court finds that Bayada has carried its burden of proving that no genuine dispute of material fact remains on this element.

### 6. Not More Than 20% of Time to Non-Exempt Work

As discussed above, Goff's primary duties were executive ones. Although she may have spent some time on other tasks, she spent most of her time assigning nurses and dealing with clients. This was exempt work, as analyzed above.

There is an issue as to whether the time that Goff spent not working while on call should be considered work time in this analysis. Sometimes, employees receive overtime pay for on call time, and sometimes they do not, depending upon the facts of the individual case. Ingram v. County of Bucks, 144 F.3d 265, 268 (3d Cir. 1998). As the court in McDowell v. Cherry Hill Twp., 2005 U.S.Dist. LEXIS 29327 at *2 (D.N.J. Nov. 21, 2005), stated, the determination of whether on call time entitles an employee to overtime only comes into play "[i]f the Court finds that Plaintiff is not exempt under the FLSA." This issue, then, is irrelevant because Goff was not entitled to overtime in the first place because she was an exempt employee.

The Court finds that Bayada has carried its burden of proving that no genuine dispute of material fact remains on this element, or on the issue of whether Goff was an exempt executive employee under the FLSA and the NJWHL. Goff is not entitled to overtime pay.

C.   Administrative Exemption

Bayada also argues that Goff was exempt under the administrative exemption to the FLSA and NJWHL, and the Court agrees.  This exemption covers an employee (1) who makes at least $455 per week, (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.

Goff's Bayada employment meets factors (1) and (3), as discussed above.

As to factor (2), it is undisputed that Goff's work was office or non-manual work.  Bayada's business involved providing nurses for patients, and Goff matched nurses to patients, ensuring that company standards were met.  As Goff stated in her resume on careerbuilder.com, as a staff supervisor at Bayada, she was involved in "casemanaging to ensure that the employee retains a positive relationship with the client and/or family while adhering to standards."  (Goff Dep. at 30; Bayada Ex. 5).  This direct role in managing and dealing with customers to ensure that standards were met fits within prong (2) of this exemption. Bayada has carried its burden of proving that no genuine dispute of material fact remains on the issue of whether Goff falls

17

within the administrative exemption.

        D.    Combined Executive/Administrative Exemption

Bayada argues that Goff also could have had a combined executive/administrative position that would be exempt from overtime requirements.  Although Goff attempts to distinguish the cases cited by Bayada and notes that they are non-binding, she does not argue that an exemption based upon a combined position is unavailable in this jurisdiction.  Rather, she reiterates her arguments about why Goff was not an executive or administrative employee.  The Court concludes that Bayada has satisfied its burden of proving that no genuine dispute of material fact remains on either of these exemptions.  Goff would also be exempt if her position is viewed as both executive and administrative.

An appropriate Order follows.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH GOFF                    :       CIVIL ACTION
                                  :
         v.                       :
                                  :
BAYADA NURSES, INC.               :       NO. 04-5226
```

ORDER

AND NOW, this 24th day of March, 2006, upon consideration of the plaintiff's Motion for Partial Summary Judgment (Docket No. 13), the defendant's Motion for Summary Judgment (Docket No. 15), and all responses and replies to both motions, and after oral argument on the motions on March 2, 2006, IT IS HEREBY ORDERED that, for the reasons set forth in a memorandum of today's date, the plaintiff's motion for partial summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED.  Judgment is entered in favor of the defendant and against the plaintiff.  This case is closed.

BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.